24CA1193 Oliveira v Ohlinger 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1193
Weld County District Court No. 23CV31002
Honorable Todd Taylor, Judge

---

Michael Oliveira,

Plaintiff-Appellant

v.

Sergeant Dan Ohlinger, Lieutenant Stephanie Southard, and Chief Tracey
McCoy,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Robert M. Liechty PC, Robert M. Liechty, Denver, Colorado, for Plaintiff-
Appellant

SGR, LLC, Courtney B. Kramer, Jonathan N. Eddy, Denver, Colorado, for
Defendants-Appellees

¶ 1    Michael Oliveira appeals the district court's dismissal of his complaint Sergeant Dan Ohlinger, Lieutenant Stephanie Southard, and Chief Tracey McCoy (collectively, the Defendants) for their roles in an internal investigation that lead to Oliveira's termination as a police officer at the City of Lochbuie Police Department (the Department).  We affirm.

## I.    Background and Procedural History

¶ 2    The allegations in Oliveira's amended complaint and the exhibits attached to the Defendants' motion to dismiss establish the following facts that gave rise to this dispute.

¶ 3    On June 12, 2023, while on duty near a convenience store, Oliveira contacted a nineteen-year-old woman, G.C., who had stopped at a number of the store's gas pumps.  During the interaction, Oliveira gave G.C. the number to his Department-issued cell phone.  Between June 12 and 18, Oliveira and G.C. exchanged approximately forty text messages of a personal and flirtatious nature on that phone, one of which included a picture of G.C. in a bathing suit.  They also met for lunch.

¶ 4     On June 14, G.C. stopped responding to Oliveira's text messages.  On June 18, Oliveira sent G.C. a final message stating, "Wow . . . you forgot about me already."

¶ 5     Oliveira alleged that he later realized the "photo might be out of line," and therefore he reported some aspects of his interactions with G.C. to his immediate supervisor, Sergeant Ohlinger.  Oliveira also showed him the picture of G.C. in her bathing suit.  Oliveira then deleted the photo and several of the text messages.

¶ 6     Days later, Sergeant Ohlinger took the phone from Oliveira and informed Lieutenant Southard about the situation.  Lieutenant Southard copied the cell phone's contents, returned it to Oliveira, and opened an internal investigation into the matter.

¶ 7     Lieutenant Southard interviewed Oliveira — in the presence of his counsel — about the phone's contents after advising him that he was under investigation for violating the Department's cell phone and performance policies.  During the interview, Oliveira told Lieutenant Southard that he thought G.C.'s bathing suit photo was inappropriate so he "ghosted her."

¶ 8     Through its internal investigation, the Department learned that (1) Oliveira had called G.C. on the cell phone on one occasion

while using a feature to block the number; (2) at no point during the text conversations did Oliveira and G.C. discuss police business; and (3) the deleted messages revealed, contrary to Oliveira's assertion, that he did not stop texting G.C. after she sent him the suggestive photo. Indeed, after receiving the photo, Oliveira responded by signifying that he "loved" it and continued exchanging messages with G.C. until she stopped responding later that evening. He then sent the final message four days later.

¶ 9 After the Department had completed its internal affairs investigation, Chief McCoy terminated Oliveira because he used the Department's cell phone for purely personal communications and was dishonest about the nature and extent of his contacts with G.C. Specifically, the Department found that Oliveira was dishonest about who made the initial contact, how he provided his phone number to G.C., the general nature of their communications, and how and when the contact between them ended. Oliveira alleges that he asked the Department to hold a hearing so that he could address these inconsistencies, but the Department declined his request.

¶ 10    As required by Colorado statute, the Department subsequently reported Oliveira's conduct and termination to the Peace Officers Standards and Training (POST) board, a governmental entity that oversees the management and conduct of law enforcement officers throughout Colorado.  *See* §§ 24-31-301 to -310, C.R.S. 2024.

¶ 11    Shortly after his termination, Oliveira applied for positions with multiple law enforcement agencies in Colorado.  As a part of the application process, he submitted to these prospective employers signed liability waivers.  In those waivers, Oliveira authorized the release of "data or records to [the prospective employer] pertaining to [his] employment [including] . . . internal affairs or disciplinary records."  Oliveira's efforts to obtain new employment with a law enforcement agency were unsuccessful.

¶ 12    Oliveira filed claims alleging that the Defendants violated his due process rights under article II, section 25 of the Colorado Constitution and section 13-21-131, C.R.S. 2024, which was adopted as part of the Enhance Law Enforcement Integrity Act (ELEIA).  Ch 110, sec. 3. § 13-21-131, 2020 Colo. Sess. Laws 452.  Oliveira also asserted common law claims for defamation and intentional interference with a contract.

4

¶ 13    The Defendants moved to dismiss under C.R.C.P. 12(b)(5), asserting that Oliveira failed to state a viable claim for deprivation of his right to due process under the Colorado Constitution. They also argued that Oliveira's common law claims failed to allege sufficient facts to support the conclusion that the Defendants acted willfully and wantonly, and therefore it failed to establish that they had waived their right to sovereign immunity.

¶ 14    In resolving the motion to dismiss, the district court first rejected the Defendants' argument that the waivers Oliveira signed for the benefit of his prospective employers waived any claims against the Defendants for providing his employment information. Nonetheless, as relevant here, the court granted the motion to dismiss for the following reasons:

- Even assuming Oliveira had adequately asserted a valid procedural due process claim for a deprivation of his liberty interest, such claim failed because the Defendants' communications were intra-governmental in nature and therefore not published.

- Oliveira's common law claims for defamation, intentional interference with a contract, and intentional interference with

a prospective contract were barred under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -119, C.R.S. 2024, because the amended complaint failed to allege that the Defendants had acted "willfully and wantonly."[1]

## II. Issues on Appeal and Controlling Law

¶ 15 On appeal, Oliveira argues that the district court erred by finding that the Defendants' dissemination of his employment information to the POST board was not a publication and that the allegations of the amended complaint failed to support a conclusion that the Defendants acted willfully and wantonly. We disagree with both contentions.

### A. Standards of Review Governing Interpretation of Constitutional Provisions and Statutes

¶ 16 The interpretation of a constitutional provision is a question of law that we review de novo. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7. Likewise, we interpret the terms of a statute de novo.

---

[1] The district court noted in its order that Oliveira conceded he did not have a property interest in his continued employment with the Department. Oliveira does not dispute this portion of the order, so we do not address it further. The district court also rejected the Defendants' waiver argument, which we do not need to address given our disposition of other issues.

*Edwards v. New Century Hospice, Inc.*, 2023 CO 49, ¶ 14.  In doing so, our primary task is to "give effect to the intent of the General Assembly."  *Id.* at ¶ 15 (quoting *People v. Dist. Ct.*, 713 P.2d 918, 921 (Colo. 1986)).

¶ 17     If a statute is unambiguous, we give its words their ordinary meaning.  *Id.*  "We read and consider statutes as a whole, construing each provision in harmony with the overall statutory scheme, structure, and purpose."  *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 736 (Colo. App. 2009).  If a statute is ambiguous or potentially conflicts with another statute, we "may consider the statute's legislative history, the object sought to be attained, the consequences of a particular construction of the statute, and the legislative declaration or purpose."  *People v. Garcia*, 2016 COA 124, ¶ 10 (first citing § 2-4-203(1), C.R.S. 2024; and then citing *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001)).

## B.    Governmental Immunity

¶ 18    In adopting the CGIA, the General Assembly attempted to balance competing policy considerations:

> It is recognized by the [G]eneral [A]ssembly
> that the doctrine of sovereign immunity,
> whereunder the state and its political

7

subdivisions are often immune from suit for injury suffered by private persons, is, in some instances, an inequitable doctrine. . . . The [G]eneral [A]ssembly also recognizes that the state and its political subdivisions provide essential public services and functions and that unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions. The [G]eneral [A]ssembly further recognizes that the taxpayers would ultimately bear the fiscal burdens of unlimited liability and that limitations on the liability of public entities and public employees are necessary in order to protect the taxpayers against excessive fiscal burdens. It is also recognized that public employees, whether elected or appointed, should be provided with protection from unlimited liability so that such public employees are not discouraged from providing the services or functions required by the citizens or from exercising the powers authorized or required by law.

§ 24-10-102, C.R.S. 2024.

¶ 19    The General Assembly effectuated this balance by granting public entities and employees broad immunity while also waiving liability for injuries arising out of certain designated actions. § 24-10-106(1), C.R.S. 2024 ("A public entity is immune from liability in all claims for injury that lie in tort or could lie in tort" unless such immunity has been expressly waived.); § 24-10-106(1)(a)-(k)

(waiving sovereign immunity for the injuries arising from specifically delineated governmental actions).

¶ 20 The CGIA also immunizes public employees against tort claims provided the claim is based on acts or omissions "occurring during the performance of [their] duties and within the scope of [their] employment unless the act or omission causing such injury was willful and wanton." § 24-10-118(2)(a), C.R.S. 2024. Thus, a plaintiff may bring a tort action, regardless of whether there has been a waiver, upon a showing that the governmental employee's "act or omission . . . was willful and wanton." *Id.*; § 24-10-105(1), C.R.S. 2024.

¶ 21 The CGIA does not define "willful and wanton" conduct. The supreme court, however, has provided guidance on the breadth of the phrase as used in the CGIA: "[W]illful and wanton conduct is not merely negligent; instead, it must exhibit a conscious disregard for the danger." *Martinez v. Est. of Bleck*, 2016 CO 58, ¶ 32 (citing *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994)).

¶ 22 It is undisputed that the Department is a public entity, and that the individual defendants were public employees acting within the scope and during the performance of their employment. *See*

§ 24-10-103(4)(a), C.R.S. 2024 (defining public employee); § 24-10-103(5) (defining public entity).  Oliveira does not contend that the complained-of acts fall within the purview of actions for which sovereign immunity has been waived under section 24-10-106(1)(a)-(k).  Nonetheless, Oliveira argues that his common law claims are viable notwithstanding the CGIA because the Defendants' actions or omissions were willful and wanton.

## C.    Due Process Claim and ELEIA

¶ 23    The Colorado Constitution prohibits the deprivation "of life, liberty or property" without the due process of law.  Colo. Const. art. II, § 25.  Oliveira argues that he alleged sufficient facts to support a claim that the Defendants violated his liberty interest by disseminating false information regarding the facts surrounding his termination, stigmatizing him and impeding his future employability.  Oliveira acknowledges that no reported Colorado case has recognized this claim under the Colorado due process clause, but points to the fact that the Tenth Circuit and other federal courts have concluded that such a claim is viable under the United States Constitution's Due Process Clause.  *See, e.g.*, *Renaud v. Wyo. Dep't of Fam. Servs.*, 203 F.3d 723, 726-27 (10th Cir. 2000);

10

*Stiesberg v. California*, 80 F.3d 353, 357 (9th Cir. 1996); *Merritt v. Brantley*, 936 F. Supp. 988, 992 (S.D. Ga. 1996). He urges us to follow their lead.

¶ 24 Under federal law, a public employee has a liberty interest in protecting their professional reputation, and thus their future employability, from being stigmatized. *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014). The government infringes upon that interest when (1) it makes a statement that "impugn[s] the good name, reputation, honor, or integrity of the employee"; (2) the statement is false; (3) the statement is made during the course of termination and "foreclose[s] other employment opportunities"; and (4) the statement is published, in other words disclosed publicly. *Id.* (quoting *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)).

¶ 25 Intra-governmental communications between governmental entities are deemed, as a matter of law, not to satisfy the "publication" element of the federally recognized liberty interest claim. *See Asbill v. Hous. Auth. of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("We hold that [plaintiff's] claim falls short . . . [because] it does not appear from the record that [the] statements were published outside the state government; such

11

intra-governmental dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'" (quoting *Bishop v. Wood*, 426 U.S. 341, 348 (1976))); *Alcorn v. La Barge*, 784 F. App'x 614, 619-20 (10th Cir. 2019) (same).

¶ 26    Oliveira argues that we should recognize such a claim under article II, section 25.  But because Colorado has enacted ELEIA, Oliveira argues, we should not adopt the intra-governmental component of the publication element.

¶ 27    The General Assembly enacted ELEIA in 2020 and amended in 2021.  It provides that

> [a] peace officer . . . who, under color of law,
> subjects or causes to be subjected, including
> failing to intervene, any other person to the
> deprivation of any individual rights that create
> binding obligations on government actors
> secured by the bill of rights, article II of the
> state constitution, is liable to the injured party
> for legal or equitable relief or any other
> appropriate relief.

§ 13-21-131(1).  To enable such claims, the statute specifies that "[s]tatutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section.  The [CGIA] does not apply to claims brought pursuant to this section[, and] [q]ualified immunity is not a defense

12

to liability pursuant to this section." § 13-21-131(2)(a)-(b). Oliveira argues that we should treat ELEIA's prohibition against the assertion of certain immunity defenses as a rejection of the intra-governmental exception to publication.

### D. Peace Officer Standards and Training (POST)

¶ 28    POST is a governmental agency tasked with overseeing the conduct and standards of peace officers. *See* § 24-31-303, C.R.S. 2024. Law enforcement agencies are required to report an officer's untruthfulness to POST, and they may be fined for failing to do so. § 24-31-303(1)(r)(II). Untruthfulness means a "peace officer knowingly made an untruthful statement concerning a material fact or knowingly omitted a material fact on an official criminal justice record . . . during an internal affairs investigation or administrative investigation and disciplinary process." § 24-31-303(1)(r)(III).

### E. Standards Governing Motions to Dismiss

#### 1. Failure to State a Claim

¶ 29    We review a district court's ruling on a motion to dismiss for failure to state a claim de novo, "applying the same standards as the [district] court." *Sch. Dist. No. 1 v. Masters*, 2018 CO 18, ¶ 13 (citation omitted).

¶ 30　　Under C.R.C.P. 12(b)(5), a claim may be dismissed if it fails to allege plausible facts upon which relief may be granted.  *Warne v. Hall*, 2016 CO 50.  In ruling on a C.R.C.P. 12(b)(5) motion, the court must accept all supporting factual allegations as true and view them in the light most favorable to the nonmoving party.  *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7.  But the court is not required to accept as true legal conclusions that are couched as factual allegations, or conclusory allegations unsupported by the alleged facts.  *Warne*, ¶ 27.  When deciding a motion to dismiss for failure to state a claim, a court may consider the facts alleged in the pleadings and documents attached as exhibits or incorporated therein by reference.  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1087 (Colo. 2011).

## 2.　Lack of Jurisdiction

¶ 31　　C.R.C.P. 12(b)(1) requires the dismissal of a claim if the court lacks jurisdiction over the subject matter.  Whether the CGIA applies to protect the government from suit is a question of subject matter jurisdiction governed by the standards for dismissal under C.R.C.P. 12(b)(1).  *Maphis v. City of Boulder*, 2022 CO 10, ¶ 13.  The

plaintiff carries the burden of proving that the government waived its immunity with respect to the claim. *Id.*

¶ 32    If a plaintiff fails to establish facts supporting the conclusion that a public employee's actions or omissions were willful and wanton, dismissal pursuant to C.R.C.P. 12(b)(1) is appropriate. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993); § 24-10-118(2)(a). In contrast to the evaluation of a C.R.C.P. 12(b)(5) motion, a court reviewing a C.R.C.P. 12(b)(1) motion "need not treat the facts alleged by [the plaintiff] as true." *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001) (quoting *City of Lakewood v. Brace*, 919 P.2d 231, 244 (Colo. 1996)). Instead, if the operative facts are disputed, the court may consider affidavits and documents and, if necessary, conduct a limited hearing to resolve disputed jurisdictional facts. *See id.*; *Trinity*, 848 P.2d at 924-25.

## III.   Analysis

¶ 33    Having set forth the applicable standards of review and controlling law, we now turn to the merits of Oliveira's appellate claims.

## A. The Due Process and ELEIA Claim

¶ 34 Oliveira argues that article II, section 25 of the Colorado Constitution protects a public employee's liberty interest in preventing false statements made during the course of termination that stigmatize the employee, thereby impeding future employability. The Defendants do not dispute that article II, section 25 could be interpreted to protect such interest, but their brief does not meaningfully develop the legal parameters or policy considerations informing whether we should recognize such a claim under Colorado's due process clause.

¶ 35 We conclude that even if Colorado formally recognized this type of liberty interest claim under article II, section 25, the claim would be subject to the intra-governmental publication exception. *See, e.g.*, *People v. Dunaway*, 88 P.3d 619, 630 (Colo. 2004) (interpreting Colorado's due process clause in view of the Federal Due Process Clause, and noting that "[w]here the analogous federal and state constitutional provisions are textually identical, we have always viewed cases interpreting the federal constitutional provision as persuasive authority"); *Workman*, 32 F.3d at 481 (describing the elements of the federal liberty interest claim in future employment);

*Asbill,* 726 F.2d at 1503 (describing and applying the intra-governmental exception). Applying the exception, we conclude that the assumed claim fails as a matter of law.

### 1. ELEIA's Impact on a Liberty Interest Claim

#### a. Alleged Inconsistency

¶ 36    Oliveira argues that Colorado should not recognize the intra-governmental exception to publication because the exception insulates a public employer from liability for some types of false communications that, if made by a private employer, would not be subject to such an exception. Oliveira's argument is premised on the erroneous assumption that private employers would be subject to a claim for violating a former employer's due process rights by providing false information. But such a claim is only actionable against governmental employers and employees. *See Jaffe v. City & Cnty. of Denver,* 15 P.3d 806, 812 (Colo. App. 2000) (The guarantee of due process "has been applied only to '*deliberate* decisions of government officials to deprive a person of life, liberty, or property.'" (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986))). Thus, we do not perceive how recognizing the intra-governmental exception to

publication would create a disparity between public and private employers.

¶ 37     Oliveira also argues that the intra-governmental exception swallows any liberty interest claim because only governmental employees can benefit from the liberty interest claim and yet terminated governmental employees generally apply for future jobs with governmental entities.  Thus, the argument continues, if the intra-governmental exception is applied it renders the employee's liberty interest claim meaningless.

¶ 38     But Oliveira points to nothing in the record that supports his assumption that former governmental employees typically limit their future employment searches to governmental entities.  We decline to base our analysis on this unsupported contention. *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34,  41 n.12 ("We don't consider underdeveloped and unsupported arguments."), *aff'd*, 2021 CO 56.  Moreover, the liberty interest claim has existed at the federal level for years, subject to the intra-governmental exception.  Oliveira points to no authority suggesting that the intra-governmental exception has swallowed the liberty interest claim in the federal context.

¶ 39     Oliveira's disparity argument also assumes that governmental employers and private employers are identically situated when it comes to the obligation to report certain employment information. But, as illustrated by the POST reporting requirements discussed in Part III.A.1.b below, governmental employers and their employees are often tasked with making reports for the public's benefit that may impact a former employee's future employability. The recognition and importance of these reporting obligations provides the foundation of the intra-governmental exception to the publication element of a liberty interest claim. *See Alcorn*, 784 F. App'x at 619 ("[T]he ability to communicate the reasons for terminating law enforcement officers to the agency tasked with setting standards for and certifying those officers is essential to the maintenance and integrity of local police departments."). And they justify application of the exception to governmental employers and employees but not private employers. *Id.*

### b.     Policy Considerations

¶ 40     Oliveira next argues that recognizing the intra-governmental exception contradicts ELEIA's purpose and would be "poor public

policy because it encourages a government agency not to follow the law." We are not persuaded.

¶ 41 Section 13-21-131(1) unequivocally precludes a peace officer from asserting sovereign immunity and the CGIA as defenses to a claim that they deprived a person of "individual rights that create binding obligations on government actors secured by the bill of rights, article II of the [Colorado Constitution]." However, Oliveira points to nothing in ELEIA suggesting that it modifies the elements of individual tort claims asserted to protect those rights.

¶ 42 Absent a clear expression of the General Assembly's intent, we do not interpret legislation as abrogating common law rules:

> Although the General Assembly possesses the authority to abrogate common law remedies, statutes may not be interpreted to abrogate the common law absent a clear expression of intent. A statute is not presumed to alter the common law except to the extent that such statute expressly provides.
>
> . . . .
>
> . . . Absent a clearer and more specific statutory indication that the General Assembly actually intended to abrogate the fundamental common law rule . . . , we must presume that the General Assembly did not intend to change the common law rule.

20

*Beach v. Beach*, 74 P.3d 1, 4 (Colo. 2003) (citations omitted).  In the absence of the General Assembly's express intent, we decline to assume that it intended to abrogate the intra-governmental exception to the publication element of a liberty interest claim.[2]

¶ 43    Nor are we persuaded by Oliveira's argument that applying the intra-governmental exception to POST disseminations "encourages a government agency not to follow the law."  As previously noted, POST mandates that law enforcement agencies report an officer's untruthful statements concerning a material fact made during an internal affairs or administrative investigation and disciplinary proceedings.  § 24-31-303(1)(r)(II)-(III).  If the intra-governmental exception to publication were not recognized it would increase the civil exposure for governmental employees accused of reporting untruthful statements under POST.

¶ 44    POST and ELEIA serve a common purpose: to facilitate the employment of quality law enforcement officers across Colorado

---

[2] Indeed, no published Colorado case has recognized a Colorado due process liberty interest in the circumstances presented here.  It is particularly speculative to assume that the General Assembly intentionally modified a common law claim not yet recognized by a reported Colorado appellate case.

who are truthful and respect the constitutional rights of the public.

Indeed, ELEIA expressly recognizes the POST reporting

requirements and their benefit in facilitating ELEIA's purpose.

> If a person believes that an employer has violated the provisions of subsection (4)(b)(I) of this section, the person shall submit a complaint to the [POST] board, created in section 24-31-302, [C.R.S. 2024,] which shall refer the complaint to an administrative law judge to determine whether a violation occurred. The administrative law judge shall notify the [POST] board chair of a finding that a violation of subsection (4)(b)(I) of this section occurred. If a violation is found, the [POST] board shall not provide [POST] cash fund money to the employer for one full year from the date of the finding.

§ 13-21-131(4)(b)(II).

¶ 45   This type of reporting requirement, which the General Assembly endorsed when passing ELEIA, is central to the purposes of both ELEIA and the intra-governmental exception to the publication element of a liberty interest claim. Thus, the failure to recognize the intra-governmental exception for POST communications would incentivize law enforcement agencies and their employees not to robustly comply with POST reporting

requirements. This was not the General Assembly's intent when enacting ELEIA.

¶ 46 Noting the absence of an express legislative intent to modify the common law elements of a liberty interest claim, and given our obligation to read statutes as a whole in order to accord consistent, harmonious, and sensible effect to all their parts, *see Black Diamond*, 211 P.3d at 736, we decline Oliveira's request that we jettison the intra-governmental exception to the publication element of a liberty interest claim.

### 2. Publication Analysis

¶ 47 Applying the intra-governmental exception to an assumed liberty interest claim, the district court concluded that the Defendants did not publish the allegedly stigmatizing information related to Oliveira's termination. In addition to his previously addressed argument that we should not recognize the intra-governmental exception, Oliveira argues that the court erred by applying the intra-governmental exception to governmental employees, rather than limiting its application to law enforcement agencies. We disagree.

¶ 48   Oliveira cites no legal authority that has held that the intra-governmental exception applies only to agencies. And though he asserts that *Alcorn* supports that conclusion, he is mistaken.

¶ 49   In *Alcorn*, a former police officer was terminated following an investigation for allegedly falsifying her timesheets. 784 F. App'x at 616. Following her termination, the department notified POST. *Id.* When she applied for another position in the same county, her application was denied, in part, because the police department's investigation showed up in the background check. *Id.* at 617. Alcorn alleged that the department and the police chief who terminated her deprived her of her liberty interest in continued employment by defaming her good name and reputation. *Id.* The Tenth Circuit applied the intra-governmental exception and held that Alcorn had failed to establish that the defendants deprived her of a protected liberty interest. *Id.* In doing so, the court made no distinction when applying the exception to the agency and its individual officers. *See id.*; *see also Workman*, 32 F.3d at 480-81 (applying the intra-governmental exception when addressing claims against the agency and its officer).

24

¶ 50    In addition to the absence of authority, we see no rationale for the distinction between officers and agencies that Oliveira urges. After all, an agency's POST reporting is necessarily based on the actions of its employees, including law enforcement personnel. Given this reality, it makes no sense to apply the exception to agencies but not their employees.

¶ 51    Finally, we reject Oliveira's belated appellate contention that the district court erred by failing to consider whether his allegations would be actionable publications based on the possible disclosure of the POST-related materials to private employers. We reject this argument because Oliveira's amended complaint failed to allege that he applied for any position with a private employer or even that the POST reports were available to private employers. Given his failure to allege these facts before the district court, we decline to address them on appeal. *See Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 882 (Colo. App. 1996) (declining to address claim not raised before the trial court); *Alcorn*, 784 F. App'x at 620 (refusing to address argument that POST publications were eventually made public because the contention was not raised before the district court).

## B. Common Law Tort Claims

¶ 52 Oliveira next argues that the district court erroneously concluded that he failed to allege facts supporting his claim that the Defendants acted willfully and wantonly. We disagree.

### 1. Applicable Law

¶ 53 Recall that claims in which the government raises sovereign immunity as a defense are reviewed under Rule 12(b)(1), rather than Rule 12(b)(5). A plaintiff carries the burden of proving that governmental employees acted willfully and wantonly. *Duke v. Gunnison Cnty. Sheriff's Off.*, 2019 COA 170, ¶¶ 31-32. It is not sufficient for a plaintiff to establish that governmental employees acted negligently; rather, the plaintiff must prove a "conscious disregard of [a known] danger." *Martinez*, ¶ 32.

### 2. Application

¶ 54 Oliveira reasons that the district court erred because *someone* at the Department — he does not specify who — deprived him of the right to a hearing to contest his termination. He seems to suggest that if he had been granted a hearing, he would have clarified that the text he sent to G.C. on June 18 was intended for someone else. But Oliveira does not dispute that the Defendants were unaware of

these unasserted facts when they investigated the claim and subsequently terminated him. Thus, the actions that they took were based on the facts they had when they acted.

¶ 55    Moreover, Oliveira's termination was not based solely on his false statement that his communications with G.C. ended on June 14. The termination was also based on the fact that Oliveira used the Department-issued phone for purely personal communications in violation of Department policies, was dishonest about his initial contact with G.C. and how he provided his telephone number to her, and misrepresented the general nature and extent of their communications. Based on these facts, which Oliveira does not meaningfully dispute, we perceive no error in the district court's finding that Oliveira failed to establish that any of the Defendants' actions were willful and wanton.

¶ 56    Finally, we reject Oliveira's suggestion that we should adopt a negligence-based standard for defining willful and wanton conduct in the employment context. Specifically, he proposes the following standard: "[A] supervisor acts willfully and wantonly if the information he provides to prospective employers (public or private) was false and the employer should have known it was false." But

Oliveira cites no authority adopting the standard he proposes. More importantly, the supreme court expressly rejected a negligence-based standard for the definition of willful and wanton as used in the CGIA: "[W]illful and wanton conduct is not merely negligent; instead, it must exhibit a conscious disregard for the danger." *Martinez*, ¶ 32.

¶ 57 Because Oliveira failed to establish that any of the Defendants' conduct was willful and wanton, we discern no error in the district court's finding that his common law claims are barred by the CGIA.

## IV. Attorney Fees and Costs

¶ 58 Oliveira seeks attorney fees under ELEIA, which requires courts to award a prevailing plaintiff reasonable attorney fees and costs. § 13-21-131(3). Because the district court did not err by granting the motion to dismiss, Oliveira's claim for attorney fees and costs necessarily fails.

## V. Disposition

¶ 59 The district court's judgment is affirmed.

JUDGE WELLING and JUDGE KUHN concur.