The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 22, 2025

**2025COA52**

**No. 24CA1093, *BNC Metro 1 v. BNC Metro 3* — Torts — Breach of Fiduciary Duty; Government — Colorado Governmental Immunity Act — Actions Against Public Employees — Acts or Omissions Outside the Scope of Employment — Notice of Claim**

Two plaintiff metropolitan districts appeal the district court's order dismissing their breach of fiduciary duty claim against former members of their boards of directors under the Colorado Governmental Immunity Act (CGIA), *see* §§ 24-10-101 to -120, C.R.S. 2024. Because the plaintiff districts failed to sufficiently allege that the individual defendants acted outside the scope of their employment, the "requirements and limitations" of the CGIA apply. § 24-10-118(1), C.R.S. 2024. One such requirement is that the plaintiff must provide notice of the claim. § 24-10-109(1), C.R.S. 2024. This is so even when the lawsuit involves a public entity suing its own employees. Because notice is a jurisdictional

prerequisite under the CGIA, the plaintiff districts' failure to provide notice means their tort claim is "forever bar[red]." *Id.* Thus, a division of the court of appeals affirms the district court's dismissal of the plaintiff districts' breach of fiduciary duty claim and remands for consideration of attorney fees.

COLORADO COURT OF APPEALS      **2025COA52**

---

Court of Appeals No. 24CA1093
Adams County District Court No. 23CV30630
Honorable Teri L. Vasquez, Judge

---

BNC Metropolitan District No. 1, a quasi-municipal corporation and political subdivision of the State of Colorado, and BNC Metropolitan District No. 2, a quasi-municipal corporation and political subdivision of the State of Colorado,

Plaintiffs-Appellants,

v.

BNC Metropolitan District No. 3, a quasi-municipal corporation and political subdivision of the State of Colorado, Theodore Antenucci, Janis L. Emanuel, Robert Bol, Julianna Antenucci, and Pauline Bol,

Defendants-Appellees.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE BROWN
J. Jones and Yun, JJ., concur

Announced May 22, 2025

---

Paul C. Rufien, P.C., Paul Rufien, Denver, Colorado, for Plaintiffs-Appellants

No appearance for Defendant-Appellee BNC Metropolitan District No. 3, a quasi-municipal corporation and political subdivision of the State of Colorado

Wheeler, Trigg, O'Donnell, LLP, Kathryn A. Reilly, Thomas A. Olsen, Daniel N. Guisbond, Denver, Colorado, for Defendants-Appellees Theodore Antenucci, Janis L. Emanuel, Robert Bol, Julianna Antenucci, and Pauline Bol

¶ 1     Plaintiffs, BNC Metropolitan District No. 1 (BNC1) and BNC Metropolitan District No. 2 (BNC2) (collectively, Plaintiff Districts), appeal the district court's dismissal of their breach of fiduciary duty claim against defendants, Theodore Antenucci, Janis L. Emanuel, Robert Bol, Julianna Antenucci, and Pauline Bol (collectively, Individual Defendants), under the Colorado Governmental Immunity Act (CGIA), *see* §§ 24-10-101 to -120, C.R.S. 2024.

¶ 2     Because the Plaintiff Districts failed to sufficiently allege that the Individual Defendants acted outside the scope of their employment as members of the Plaintiff Districts' boards of directors, the "requirements and limitations" of the CGIA apply. § 24-10-118(1), C.R.S. 2024.  One such requirement is that the plaintiff must provide notice of the claim.  § 24-10-109(1), C.R.S. 2024.  This is so even when the lawsuit involves a public entity suing its own employees.  Because notice is a jurisdictional prerequisite under the CGIA, the Plaintiff Districts' failure to provide notice means their tort claim against the Individual Defendants is "forever bar[red]." *Id.*  Thus, we affirm the district court's dismissal of the Plaintiff Districts' breach of fiduciary duty claim and remand for consideration of attorney fees.

## I.    Background Facts

¶ 3    The Plaintiff Districts alleged the following facts in their complaint, and the district court assumed them to be true when it dismissed their breach of fiduciary duty claim.

¶ 4    The original developer of real property in Commerce City prepared and submitted service plans to establish BNC1, BNC2, and BNC Metropolitan District No. 3 (BNC3) under the Special District Act, §§ 32-1-101 to -1807, C.R.S. 2024.  After elections and by orders of the Adams County District Court, BNC1 was established in 2000, and BNC2 and BNC3 were established in 2004.  Catellus, Inc.,[1] acquired the real property within the boundaries of BNC1, BNC2, and BNC3 through foreclosure and became the primary developer.

¶ 5    In October 2017, BNC1, BNC2, and BNC3 entered into a cost sharing intergovernmental agreement (the Original Cost Sharing Agreement).  This agreement designated BNC2 and BNC3 as the

---

[1] The Plaintiff Districts' complaint defines "Catellus" as including several subsidiaries and related companies, including but not limited to Catellus, LLC, Catellus CC Note, LLC, Catellus Acquisition Company, Catellus Development Corporation, and Catellus Mixed Land, LLC.

"Constructing Districts" responsible for constructing the improvements necessary for development.

¶ 6 In December 2019, BNC1, BNC2, and BNC3 amended the Original Cost Sharing Agreement (the First Amendment). The First Amendment specified that BNC3 would be the only "Constructing District" for any remaining improvements and required BNC1 and BNC2 to transfer the necessary funds to BNC3 for completing those improvements.

¶ 7 On April 24, 2020, BNC1 transferred $3,363,277 to BNC3 under the Original Cost Sharing Agreement and the First Amendment. At the time of the transfer, BNC1's board of directors consisted of two designees from Catellus — Theodore Antenucci and Janis Emanuel — and three designees from the original developer.

¶ 8 On April 30, BNC2 transferred $733,636 from its "Subordinate 2019B Project Fund" to Catellus based on a cost requisition request. On May 4, BNC2 transferred $694,556 to BNC3 under the Original Cost Sharing Agreement and the First Amendment. At the time of these transfers, BNC2's board of directors consisted of Theodore Antenucci, Janis Emanuel, and additional Catellus designees Robert Bol, Julianna Antenucci, and Pauline Bol.

¶ 9    Meanwhile, in February 2020, Robert Bol and five independent homeowners submitted self-nomination forms to serve on BNC2's board of directors.  On May 5, the five homeowners were elected to serve on that board.  On the same day, three other independent homeowners began serving on BNC1's board of directors as well.  The Catellus designees resigned from BNC1's board in June.

¶ 10    When the April and May transfers were made, BNC3's board of directors consisted entirely of Catellus designees Theodore Antenucci, Janis Emanuel, and Robert Bol.  By the time the Plaintiff Districts filed their complaint, the composition of BNC3's board had not changed.

## II.    Procedural History

¶ 11    In May 2023, the Plaintiff Districts filed suit against BNC3 and the Individual Defendants.  As relevant to this appeal, the Plaintiff Districts asserted a claim for breach of fiduciary duty against the Individual Defendants.  The Individual Defendants moved to dismiss under C.R.C.P. 12(b)(1), arguing that the CGIA barred the claim because they were public employees, and the Plaintiff Districts had failed to provide the required statutory notice.  The Plaintiff Districts countered that the CGIA did not apply because

4

they had alleged that the Individual Defendants' conduct fell outside the scope of their public employment. The Plaintiff Districts asked the district court to hold an evidentiary hearing to resolve any "factual issues as to whether the Individual Defendants acted within the scope of employment and whether their conduct was willful and wanton."

¶ 12 The court declined to hold a hearing but granted the Individual Defendants' motion to dismiss the breach of fiduciary duty claim. In a detailed written order, the court determined that (1) the CGIA applied because the Plaintiff Districts failed to sufficiently allege that the Individual Defendants were acting outside the scope of their employment; (2) the Plaintiff Districts were required to but did not provide notice under the CGIA; and (3) because the Plaintiff Districts did not provide notice, the court lacked subject matter jurisdiction over the claim. The Plaintiff Districts appeal the dismissal. *See* § 24-10-118(2.5) (The court's decision on a public employee's motion raising sovereign immunity "shall be a final judgment and shall be subject to interlocutory appeal."); *Carothers v. Archuleta Cnty. Sheriff*, 159 P.3d 647, 650 (Colo. App. 2006) ("[W]hen a public employee challenges the

sufficiency of the plaintiffs' notice of claim, the challenge raises an issue of sovereign immunity, and the trial court's decision is immediately appealable.").[2]

## III. Analysis

¶ 13    The Plaintiff Districts contend that the district court erred by (1) concluding that the CGIA notice requirement applies because they sufficiently alleged that the Individual Defendants' conduct was outside the scope of their public employment; (2) declining to conduct an evidentiary hearing to resolve whether the Individual Defendants were acting outside the scope of their employment; and (3) concluding that they were required to provide notice of their claim under the CGIA.  We disagree with all three contentions.

---

[2] The Plaintiff Districts' original complaint alleged that a dispute existed between BNC1, BNC2, and BNC3 regarding the validity and enforceability of the Original Cost Sharing Agreement and the First Amendment.  The Plaintiff Districts requested that the district court declare the Original Cost Sharing Agreement and the First Amendment void because the contracts lacked mutual consideration, were unconscionable, and were contrary to public policy.  Alternatively, the Plaintiff Districts asserted that BNC3 had breached the Original Cost Sharing Agreement and the First Amendment.  When the court dismissed the breach of fiduciary duty claim against the Individual Defendants, the contract claims against BNC3 remained pending.

## A. Applicable Law and Standard of Review

¶ 14     Under the CGIA, "[a] public entity is immune from liability in all claims for injury that lie in tort or could lie in tort" unless immunity is waived. § 24-10-106(1), C.R.S. 2024. The CGIA also provides that "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of [their] duties and within the scope of [their] employment, unless such act or omission was willful and wanton," subject to certain exceptions not relevant here. § 24-10-105(1), C.R.S. 2024.

¶ 15     The central purpose of the CGIA is to "limit the potential liability of public entities for compensatory money damages in tort." *Tallman Gulch Metro. Dist. v. Natureview Dev., LLC*, 2017 COA 69, ¶ 14. The CGIA also provides public employees "protection from unlimited liability so that such public employees are not discouraged from providing the services or functions required by the citizens or from exercising the powers authorized or required by law." § 24-10-102, C.R.S. 2024.

¶ 16     "The determination of whether there is immunity under the CGIA is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1)." *Moran v. Standard Ins. Co.*, 187

7

P.3d 1162, 1164 (Colo. App. 2008). The plaintiff bears the burden of establishing that the public employee is not immune under the CGIA and that the trial court has jurisdiction over the tort claim. *Henderson v. City & Cnty. of Denver*, 2012 COA 152, ¶ 21.

¶ 17    To resolve any disputes of fact bearing on questions of immunity, a trial court may hold an evidentiary hearing (a *Trinity* hearing). *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993); *see also Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253, 1258 (Colo. 2003). The trial court has discretion to decide whether a *Trinity* hearing is necessary, *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001), and "[w]e review the court's decision whether to conduct a *Trinity* hearing for abuse of discretion," *Bilderback v. McNabb*, 2020 COA 133, ¶ 10. If the relevant evidence and underlying facts are undisputed, the trial court may decide the jurisdictional issue as a matter of law, and we review its decision de novo. *Medina*, 35 P.3d at 452-53; *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 2018 COA 92, ¶ 11.

## B. The CGIA's Notice Requirement Applies to the Plaintiff Districts' Breach of Fiduciary Duty Claim

¶ 18      The Plaintiff Districts contend that the district court erred by concluding that the CGIA's notice requirement applies because they sufficiently alleged that the Individual Defendants were acting outside the scope of their employment. We disagree.

### 1. Applicability of the CGIA's Notice Requirement Depends on Whether the Individual Defendants Were Acting Outside the Scope of their Public Employment

¶ 19      The "requirements and limitations" of the CGIA apply in

> [a]ny action against a public employee . . . which lies in tort or could lie in tort . . . which arises out of injuries sustained from an act or omission of such employee which occurred or is alleged in the complaint to have occurred during the performance of [their] duties and within the scope of [their] employment, unless the act or omission causing such injury was willful and wanton.

§ 24-10-118(1). One such requirement is that the plaintiff must provide notice of the claim. §§ 24-10-109(1), 24-10-118(1)(a); *see Middleton v. Hartman*, 45 P.3d 721, 730 (Colo. 2002) (the CGIA's "notice-of-claim provisions unambiguously require[] notice in a suit against a state employee in which the plaintiff seeks to hold the state employee personally liable"). Notice is "a jurisdictional

9

prerequisite" and is required "whether or not the injury sustained is alleged in the complaint to have occurred as the result of the willful and wanton act" of a public employee. § 24-10-118(1)(a).

¶ 20    It is undisputed that the Plaintiff Districts' breach of fiduciary duty claim is a tort claim. *See Accident & Injury Med. Specialists, P.C. v. Mintz,* 2012 CO 50, ¶ 21 ("The breach of fiduciary duty cause of action is a tort to remedy economic harm suffered by one party due to a breach of duties owed in a fiduciary relationship."). It is also undisputed that the claim arises from conduct in which the Individual Defendants engaged when they were board members of BNC1, BNC2, and BNC3, such that the Individual Defendants are considered public employees for purposes of the CGIA. *See* § 24-10-103(4)(a), (5), C.R.S. 2024 (defining a "[p]ublic employee" as "an officer, employee, servant, or authorized volunteer" of a "public entity," which includes "every other kind of district . . . or political subdivision thereof organized pursuant to law"); *Falcon Broadband Inc.,* ¶ 9 (members of a special district's board of directors are public employees for the purposes of the CGIA). Thus, unless the Plaintiff Districts sufficiently alleged that the Individual Defendants

were acting outside the scope of their public employment, the CGIA's notice requirement applies. *See* § 24-10-118(1)(a).

¶ 21    An employee is acting "within the scope of [their] employment if the work done is assigned to [them] by [their] employer, is necessarily incidental to that work, or is customary in the employer's business." *Podboy v. Fraternal Ord. of Police, Denver Sheriff Lodge 27*, 94 P.3d 1226, 1230 (Colo. App. 2004). "The determination of whether an act of an employee 'occurred within the scope of employment depends on an examination of the totality of the circumstances.'" *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19, ¶ 47 (quoting *Podboy*, 94 P.3d at 1230).

2.    The Plaintiff Districts Failed to Sufficiently Allege that the Individual Defendants Were Acting Outside the Scope of Their Public Employment

¶ 22    In their complaint, the Plaintiff Districts alleged that the Individual Defendants breached their fiduciary duties "by acting in their individual capacities as representatives of Catellus rather than as fiduciary board members." Specifically, the Plaintiff Districts alleged that the Individual Defendants breached their fiduciary duties by

11

- approving the Original Cost Sharing Agreement and the First Amendment when they "lacked consideration" benefitting BNC1 and BNC2, were "unfair and unconscionable, and violated public policy";

- approving the First Amendment "without any need or benefit" to BNC1 or BNC2, "less than five months before" BNC1's and BNC2's boards of directors changed to "unconflicted homeowners, and while a petition for recall was pending";

- transferring $3,363,277 from BNC1 to BNC3 under the Original Cost Sharing Agreement and the First Amendment "less than two weeks before majority control of BNC1['s] board of directors would be transitioned to unconflicted homeowners, and while BNC3 would continue to be controlled by Catellus";

- transferring $733,636 from BNC2's "Subordinate 2019B Project Fund" to Catellus based on a cost requisition request "less than one week before control of the BNC2 board of directors would be transitioned to independent,

unconflicted homeowners, and while BNC3 would continue to be controlled by Catellus";

- transferring $694,556 from BNC2 to BNC3 under the Original Cost Sharing Agreement and the First Amendment "less than one week before control of the BNC2 board of directors would be transitioned to independent, unconflicted homeowners, and while BNC3 would continue to be controlled by Catellus"; and

- "[r]equiring BNC2 to undertake the time and expense associated with" an election "when Robert Bol was not a qualified eligible elector of BNC2."

¶ 23    The Plaintiff Districts also generally alleged that the Individual Defendants "each benefitted personally from their individual breach of fiduciary duty through the benefit conferred upon Catellus, their employer, and their resulting compensation from Catellus."  And they alleged that, "[i]n breaching their fiduciary duties, the [Individual Defendants] acted willfully and wantonly, and as such,

outside the scope of their governmental function as board members" of their respective districts.[3]

¶ 24     The only specific actions the Plaintiff Districts allege the Individual Defendants took — entering into contracts, transferring money between districts and to the developer, and holding elections — are routine actions in the work of members of a special district's board of directors.  *See Henderson*, ¶ 21; *Podboy*, 94 P.3d at 1230. Although these allegations may speak to whether the Individual Defendants breached their fiduciary duties, they do not demonstrate that the Individual Defendants acted outside the scope of their employment.

¶ 25     The Special District Act specifically grants board members the authority "[t]o enter into contracts and agreements affecting the

---

[3] The Plaintiff Districts assert for the first time on appeal that the Individual Defendants' conduct fell outside the scope of their employment because it violated the Colorado Code of Ethics. Because the Plaintiff Districts did not make this argument to the district court, we decline to address it further.  *See Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50 (We do not require "talismanic language" to preserve an argument, but a party must present "the sum and substance of the argument" for it to be properly preserved for appeal.) (citations omitted); *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22 ("We do not review issues that have been insufficiently preserved.").

affairs of the special district"; to "borrow money and incur indebtedness . . . and to issue bonds"; and to "acquire, dispose of, and encumber real and personal property."  § 32-1-1001(1)(d)(I), (e), (f), C.R.S. 2024.  And after the special district is organized and the first board elected, the Special District Act empowers the board to "govern the conduct of all subsequent regular and special elections of the special district."  § 32-1-804, C.R.S. 2024.

¶ 26    In addition, each district's respective service plan provides that "[i]t is anticipated that the [d]istricts, collectively, will undertake the financing and construction of the improvements," so that "the necessary services and improvements can be financed in the most favorable and efficient manner."  The service plans also contemplate that the districts would enter into an "Intergovernmental Cost Sharing and Recovery Agreement" to govern "the relationships between and among the [d]istricts with respect to the financing and construction of improvements," including by establishing a mechanism for cooperative and proportional funding.

¶ 27    Because the challenged actions are customary for special district board members, and some are even specifically contemplated by the districts' service plans, the Plaintiff Districts

15

needed to allege *how* such actions were beyond the Individual Defendants' powers. They did not do so. Seemingly to the contrary, the complaint alleges that the Individual Defendants transferred money to BNC3 "under" the Original Cost Sharing Agreement and the First Amendment and to Catellus "based on a cost requisition request." And although the Plaintiff Districts suggest that the *timing* of the transfers is suspicious, they do not allege that the Individual Defendants somehow lacked authority to complete the transfers at the time they were made.

¶ 28 True, the Plaintiff Districts allege that the Original Cost Sharing Agreement and First Amendment "lacked consideration," were "unfair and unconscionable," and "violated public policy," but they fail to allege *why* the contracts suffer from these defects. Such allegations are legal conclusions couched as factual allegations, which we need not accept as true. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011).

¶ 29 As to the allegation that the Individual Defendants required BNC2 to conduct an "unnecessary" election, even accepting that the election was not necessary, which is in the nature of a legal conclusion, *see id.*, conducting elections falls within the board

16

members' scope of employment. *See Henderson*, ¶ 21; *Podboy*, 94 P.3d at 1230. In addition, the only harm alleged to have resulted from the "unnecessary" election is that it required "time and expense," which is not so out of the ordinary as to suggest that, by conducting the election, the Individual Defendants acted beyond the scope of their employment. *See Podboy*, 94 P.3d at 1230; *see also Warne v. Hall*, 2016 CO 50, ¶ 27 (conclusory allegations are insufficient to state a claim and are not entitled to an assumption that they are true).

¶ 30     The Plaintiff Districts' bald allegation that the Individual Defendants acted as representatives of Catellus rather than as district board members and "benefitted personally" from their alleged breaches of fiduciary duty is also not enough. The Plaintiff Districts essentially allege that simply because the Individual Defendants were employees of Catellus, they were acting in their private capacities for personal gain and outside the scope of their public employment. But "developer employees frequently comprise the sole managers of special districts in their early stages." *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 34. Such an arrangement "is by no means peculiar," and special

17

districts "are often established by developers" to finance the infrastructure needed for new developments through the issuance of municipal bonds. *Id.* at ¶ 34 n.9. Without more, we need not credit such conclusory allegations. *See Warne*, ¶ 27.

¶ 31   Finally, the Plaintiff Districts' allegation that the Individual Defendants acted outside the scope of their employment *because* they acted willfully and wantonly does not save their claim for two reasons. First, the Plaintiff Districts fail to explain *how* the Individual Defendants' conduct meets the willful and wanton standard. "[W]illful and wanton conduct is not merely negligent; instead, it must exhibit a conscious disregard for the danger." *Martinez v. Est. of Bleck*, 2016 CO 58, ¶ 32. The Plaintiff Districts' generic allegation is insufficient. *See* § 24-10-110(5)(b), C.R.S. 2024 ("Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted."); *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) ("The [CGIA] 'requires that a plaintiff set forth in [their] complaint specific facts which support [their] claim that public employees acted willfully and wantonly'; conclusory allegations are

18

insufficient." (quoting *Robinson v. City & Cnty. of Denver*, 39 F. Supp. 2d 1257, 1264 (D. Colo. 1999))).

¶ 32   Second, notice is required under the CGIA regardless of whether the alleged injury resulted from a public employee's willful and wanton conduct. *See* § 24-10-109(1) ("Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, *whether or not by a willful and wanton act or omission*, shall file a written notice . . . .") (emphasis added); *see also* § 24-10-118(1)(a) (requiring notice "regardless of whether . . . the public entity might be liable"). The Plaintiff Districts cannot avoid the obligation to provide notice merely by alleging that the Individual Defendants acted willfully and wantonly. *See First Nat'l Bank of Durango*, ¶ 45 ("[W]hether the notice requirement applies in actions alleging that the employee's acts or omissions occurred outside the scope of [their] employment . . . is a distinct inquiry from whether the employee acted willfully and wantonly.").

¶ 33   We are not persuaded otherwise by the Plaintiff Districts' reliance on *Tallman* to argue that the CGIA does not apply where a public employee allegedly acts in a financially reckless manner and

19

in bad faith for their own personal gain. We acknowledge that the division in *Tallman* determined that the CGIA was ambiguous regarding its application "to suits brought by a public entity plaintiff" against its own employee and that the purpose of the CGIA would be frustrated if it permitted employees "to shield [themselves] with the sovereign immunity meant to protect a public entity, and a public employee only when acting as an extension of the entity." *Tallman*, ¶¶ 19, 21. But the division limited its conclusion to the unique facts presented in that case, reasoning that allowing the defendant to claim immunity under the circumstances "[did] not effectuate the purpose of the CGIA." *Id.* at ¶ 22.

¶ 34 Notably, the division did not frame its analysis in terms of whether the defendant's conduct fell outside the scope of his employment, nor did it purport to announce a broad rule that the CGIA never applies when a public entity sues its own employee. Instead, it clarified that it did "not speak to other circumstances under which a public entity, as plaintiff, may sue its own employees for their conduct." *Id.* at ¶ 23; *see also Chavez v. Chavez*, 2020

COA 70, ¶ 13 (explaining that one division of the court of appeals is not bound by another).[4]

¶ 35    Even so, in our view, had the *Tallman* division analyzed whether the public entity adequately alleged that the defendant acted outside the scope of his employment, it likely would have reached the same conclusion given the nature of the defendant's conduct.  There, the district alleged that the defendant was both the president of the special district's board of directors and the owner of the private developer responsible for building the project's infrastructure.  *Tallman*, ¶ 2.  The defendant, as president of the board, sent himself, as manager of the developer, "a letter purporting to accept nearly four million dollars of improvements on behalf of the [d]istrict," some of which had not been constructed.  *Id.* at ¶¶ 3-5 (the total cost of improvements was approximately $6 million, only one-third of which had been constructed).  The

---

[4] An undercurrent of the Plaintiff Districts' arguments seems to be that the CGIA should not apply at all when a public entity sues its own employee.  Although the CGIA's declaration of policy acknowledges that the doctrine of sovereign immunity typically protects public entities "from suit for injury suffered by *private persons*," § 24-10-102, C.R.S. 2024 (emphasis added), nothing in the operative provisions of the CGIA limits its application to claims brought by private plaintiffs.

21

defendant also completely drew down and then defaulted on an $8.6 million construction loan despite constructing only a fraction of the improvements, and the bank sought to foreclose on the project, which served as collateral for the loan. *Id.* at ¶¶ 4-6. Then, after the foreclosure proceedings had begun, the defendant "signed off on the issuance of $4,214,000 in bonds" to the developer, which were issued just ten days before the public trustee authorized the sale of the project. *Id.* The district also "allege[d] that [the defendant] and [the developer] did not disclose prior to the issuance of the bonds the financial status, the failure to meet sales expectations, the pending foreclosure, and the conflict of interest presented by [the defendant's] involvement on both sides of the bond transaction." *Id.* at ¶ 7.

¶ 36    In contrast, the Plaintiff Districts did not allege that the Individual Defendants owned Catellus, accepted improvements that had not been constructed by Catellus, or issued bonds to provide funds to Catellus knowing that it was in dire financial straits or that district property was subject to foreclosure. The Plaintiff Districts did not allege that the Individual Defendants withheld information or failed to disclose any potential conflicts; on the

22

contrary, the Plaintiff Districts alleged that each of the Individual Defendants filed conflict of interest disclosures (even though on appeal the Plaintiff Districts contest the sufficiency of such disclosures). Although the Plaintiff Districts alleged that BNC1 and BNC2 transferred funds to BNC3 when construction of at least one improvement had not yet begun and just weeks before control of the districts transferred to independent homeowners, they did not explain why doing so was financially reckless, whether BNC3 did anything improper with the funds or failed to construct the remaining improvements, or how the Individual Defendants specifically benefitted from the transfers.[5] Unlike the division in *Tallman,* we conclude that allowing the Individual Defendants the initial protection of the CGIA's notice requirement does not undermine the CGIA's purpose.

---

[5] To the extent the Plaintiff Districts claim that any of the transactions breached the Original Cost Sharing Agreement or the First Amendment, those are contract claims that operate outside the CGIA and remain pending against BNC3 in the district court. *See City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n,* 2024 CO 46, ¶ 30 ("[T]he immunity blanket provided by the CGIA does not cover 'actions grounded in contract.'" (quoting *Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1003 (Colo. 2008))).

¶ 37 Because the Plaintiff Districts failed to sufficiently allege that the Individual Defendants were acting outside the scope of their employment, we conclude that the district court properly determined that the CGIA notice requirement applies. *See* §§ 24-10-105, -118(1).

C. The District Court Was Not Required to Hold a *Trinity* Hearing

¶ 38 The Plaintiff Districts contend that the district court erred by failing to hold a *Trinity* hearing, arguing that they should have been allowed to conduct discovery and present evidence to establish "the precise nature of the Individual Defendants' personal benefit and the precise amount benefitted." We are not persuaded.

¶ 39 When there is no evidentiary dispute, "the court may rule without a hearing." *Duke v. Gunnison Cnty. Sheriff's Off.*, 2019 COA 170, ¶ 32; *see also Medina*, 35 P.3d at 452. The Individual Defendants did not dispute any of the relevant facts; for purposes of resolving the motion to dismiss, they admitted that they were employees and designees of Catellus, adopted the Original Cost Sharing Agreement and the First Amendment, and transferred money pursuant to those agreements. The Individual Defendants

24

also did not dispute the Plaintiff Districts' allegations that they held an election for BNC2.

¶ 40    The district court was not required to credit the Plaintiff Districts' conclusory allegations that the Individual Defendants were acting in their private capacities, personally benefitted from the transactions, and engaged in willful and wanton conduct. *See Wilson*, 126 P.3d at 282. It accepted the *well-pleaded* facts as true and determined that "because [the Plaintiff Districts] did not offer any evidence by way of [a]ffidavit or exhibits that raises a dispute, the [c]ourt does not believe that a *Trinity* hearing is necessary." *See City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1078 (Colo. App. 2006) (a plaintiff may present evidence outside their pleadings to resolve a jurisdictional challenge).

¶ 41    Because the complaint did not create a dispute by alleging facts sufficient to support a finding that the Individual Defendants acted outside the scope of their employment, the district court did not abuse its discretion by declining to conduct a hearing. *See Bilderback*, ¶ 10; *see also Padilla v. Sch. Dist. No.1*, 25 P.3d 1176, 1180 (Colo. 2001) (the trial court did not abuse its discretion by

ruling on the public entity's motion to dismiss without a hearing because the court accepted all the plaintiff's allegations as true).

### D. The Plaintiff Districts Were Required to but Did Not Provide Notice Under the CGIA

¶ 42    The Plaintiff Districts contend that the district court erred by concluding that they were required to provide notice of their claim under the CGIA.[6]  We disagree.

¶ 43    Any person claiming to have suffered an injury by a public employee acting in the course and scope of employment, "whether or not by a willful and wanton act or omission," must file a written notice "with the governing body of the public entity or the attorney representing the public entity" within 182 days after discovering the

---

[6] The Plaintiff Districts also assert that it would be absurd to require them to provide notice to themselves.  But the Plaintiff Districts failed to raise this argument in the district court, so we will not address it for the first time on appeal.  *See Madalena*, ¶ 50; *Rinker*, ¶ 22.

injury. § 24-10-109(1), (3)(a).[7] Compliance with the notice requirement is a "jurisdictional prerequisite to any action brought under the provisions of [the CGIA], and failure of compliance shall forever bar any such action." *Id.*; *see also* § 24-10-118(1)(a). Under the plain language of the statute, a plaintiff is not excused from the notice requirement simply by alleging that the public employee engaged in willful and wanton conduct. *See* §§ 24-10-109, -118(1)(a); *see also First Nat'l Bank of Durango*, ¶ 11 ("Even if the employee ultimately is not immune from suit because an exception to immunity applies or the act or omission causing the claimant's alleged injury was willful and wanton, notice still must be provided for the suit to proceed.").

¶ 44    It is undisputed that the Plaintiff Districts did not provide the required notice. Because the Plaintiff Districts failed to comply with

---

[7] In their reply brief, the Plaintiff Districts argue that the Individual Defendants could effectively insulate themselves from being sued by retaining control over the districts for more than 182 days after breaching their fiduciary duties. We do not address arguments raised for the first time in a reply brief. *Meadow Homes Dev. Corp. v. Bowens*, 211 P.3d 743, 748 (Colo. App. 2009). In any event, those are not the facts of this case, where control of BNC1 and BNC2 was transferred to independent homeowners approximately one month after the Individual Defendants took the actions alleged to have breached their fiduciary duties.

this "jurisdictional prerequisite," the district court correctly concluded that it lacked jurisdiction over their breach of fiduciary duty claim. *See* §§ 24-10-109(1), -118(1)(a); *First Nat'l Bank of Durango*, ¶ 12. And because of our disposition, we need not reach the Individual Defendants' alternative bases to affirm.

## IV.    Attorney Fees

¶ 45    The Individual Defendants request an award of their appellate attorney fees under section 13-17-201(1), C.R.S. 2024, which "creates a mandatory right to attorney fees when a plaintiff's tort action is dismissed prior to trial under C.R.C.P. 12(b)." *Colo. Special Dists. Prop & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 59. Because the district court dismissed the single tort claim asserted against the Individual Defendants on their C.R.C.P. 12(b)(1) motion, the Individual Defendants are entitled to recover their reasonable appellate attorney fees for defending against this appeal. *See id.*; *Wark v. Bd. of Cnty. Comm'rs*, 47 P.3d 711, 717 (Colo. App. 2002) (A party who successfully defends an appeal from the dismissal of a tort action under C.R.C.P. 12(b) "is also entitled to recover reasonable attorney fees incurred on appeal."); *see also* § 24-10-118(2.5) (the court's decision on a motion to dismiss based on

28

sovereign immunity is "a final judgment").  We remand to the district court to determine the reasonable amount of fees to be awarded to the Individual Defendants.  C.A.R. 39.1.

## V.    Disposition

¶ 46    We affirm the district court's judgment and remand for the district court to determine the amount of reasonable appellate attorney fees to be awarded to the Individual Defendants.

JUDGE J. JONES and JUDGE YUN concur.