25CA0048 Unger v Pagosa Area Water 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0048
Archuleta County District Court No. 23CV30053
Honorable Jeffrey R. Wilson, Judge

William Unger and Yolanda Unger,

Plaintiffs-Appellees,

v.

Pagosa Area Water and Sanitation District,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

The Kelly Law Firm, LLC, Reid Kelly, Pagosa Springs, Colorado, for Plaintiffs-Appellees

The Lane Law Firm, P.C., Sean J. Lane, Alex M. Pass, Brittney M. Townsley, Aurora, Colorado, for Defendant-Appellant

¶ 1     Defendant, Pagosa Area Water and Sanitation District, appeals the district court's order denying its motion to dismiss, under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2025, the claims brought by plaintiffs, William and Yolanda Unger.  We affirm.

## I.     Background

¶ 2     According to their complaint, in April 2023, the Ungers were contacted by a neighbor about raw sewage flooding into the Ungers' Pagosa Springs home.  The Ungers lived in Texas and rented their Pagosa Springs home when they were out of town.  The neighbor also informed the Ungers that the manhole cover located in front of the Ungers' home was not secured and that the manhole was "open."

¶ 3     The Ungers contacted a local restoration company to inspect the area and "prevent any further damage to the [h]ome."  The inspectors determined that the District's sewage mainline, which was located in front of the Ungers' home, had caused the flooding. The inspectors noted that road aggregate and debris had gotten into the open manhole and created a blockage of the sewer mainline

1

immediately to the east of the Ungers' home. The inspectors reported the leak to the District.

¶ 4 The Ungers' initial complaint alleged negligence and negligence per se. The District moved to dismiss that complaint, asserting sovereign immunity under section 24-10-106(1), C.R.S. 2025. The district court granted the District's motion to dismiss, and the court allowed the Ungers to file an amended complaint, which is the complaint at issue in this appeal.

¶ 5 The Ungers' amended complaint alleged negligent design and construction of the manhole, negligent maintenance of the manhole and the sewer system, negligent creation of a dangerous condition, and negligence per se. The District moved to dismiss the amended complaint on the grounds that it was immune from liability under the CGIA.

¶ 6 The district court granted the District's motion in part, dismissing the negligent design and construction claim and the negligence per se claim to the extent it was based on "allegations that the [Ungers'] damages were caused by the negligent construction and design." The court denied the motion as to the other two claims.

## II. Analysis

¶ 7 The District contends that the district court erred by not dismissing this case in its entirety under the CGIA. Specifically, the District contends that the district court erred because (1) the Ungers didn't demonstrate the original condition of the sewer system; (2) the Ungers' injuries didn't result from a dangerous condition of which the District had prior notice; and (3) the court should have held a *Trinity* hearing rather than forcing discovery.[1]

¶ 8 We address each argument in turn.

### A. Legal Principles and Standard of Review

¶ 9 The CGIA generally immunizes the government from tort liability. *See* § 24-10-106(1). However, the CGIA also provides that a public entity can waive immunity under certain circumstances. *See* § 24-10-106(1)(a)-(k). Two such waivers are at play in this case.

¶ 10 First, sovereign immunity is waived when a plaintiff is injured by "[a] dangerous condition of any . . . public water, gas, sanitation, electrical, power, or swimming facility." § 24-10-106(1)(e). A dangerous condition is defined as "either a physical condition of a

---

[1] We address the issues on appeal in a different order than those raised in the opening brief.

3

facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist," so long as the condition was "proximately caused by the negligent act or omission of the public entity . . . in constructing or maintaining such facility." § 24-10-103(1.3), C.R.S. 2025.

¶ 11    Second, sovereign immunity is waived for injuries resulting from "[t]he operation and maintenance of any public water facility, gas facility, [or] sanitation facility." § 24-10-106(1)(f).  Maintenance is defined as

> the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure.  "Maintenance" does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.

§ 24-10-103(2.5).  This maintenance exception requires that the government maintain the facility "in the same general state of repair . . . as initially constructed."  *Id.*

¶ 12    "Whether a governmental entity can be sued is a question of subject-matter jurisdiction."  *City of Colorado Springs v. Powell*, 48

P.3d 561, 563 (Colo. 2002). "The injured plaintiff has the burden of establishing that immunity has been waived" and proving that the district court has jurisdiction. *Id.*; *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001). While C.R.C.P. 12(b)(5) "constrains the court by requiring it to take the plaintiff's allegations as true and draw all inferences in the plaintiff's favor, [C.R.C.P.] 12(b)(1) permits the court 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Medina*, 35 P.3d at 452 (quoting *Trinity Broad. of Denv., Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo. 1993)). We review any factual findings for clear error, and we review de novo questions of governmental immunity. *City & County of Denver v. Dennis*, 2018 CO 37, ¶ 12.

### B. Original Condition of the Sewer System

The District argues that the Ungers failed to demonstrate an immunity waiver because they did not show that their injuries resulted from "[t]he operation and maintenance of any public . . . sanitation facility." § 24-10-106(1)(f). The District points out that a waiver claim under this section must demonstrate that the District failed to maintain the sewer system "in the same general state of repair or efficiency as initially constructed or . . . preserv[e] [the

sewer system] from decline or failure." § 24-10-103(2.5). The District contends that the Ungers failed to provide evidence of the sewer system's initially constructed condition, so they could not demonstrate that the District failed to maintain it.

¶ 14    It's true that a governmental entity has no duty under the CGIA to improve or upgrade a public facility. *See id.* However, "it does have a duty to repair [a public facility when the facility] has changed from its original condition and this change poses a danger." *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1385 (Colo. 1997) (discussing obligation to prevent dangerous conditions on roads under section 24-10-106(1)(d)).

¶ 15    While the District claims that the Ungers provided nothing in support of their claim that the District failed to maintain its sewer system, that's not right. The Ungers included the following allegations in and attachments to the amended complaint, among others:

- An article published in the Pagosa Daily Post authored by the District Manager alerted residents of infiltration and inflow issues with the sewer system. The article indicated that infiltration occurred through "holes,

6

cracks, joint failures, and faulty connections" in the system. It also indicated that the lift stations were installed in the 1970s and the vaults housing the pumping equipment "are decaying and prone to infiltration." The article noted that the District would have technicians perform visual inspections of manholes.

- A notice of violation/cease and desist/clean-up order from the Colorado Department of Public Health and Environment (CDPHE) detailed fifteen sewer spill events leading up to the Ungers' flooding. The letter noted that the spill events are not permitted under the District's discharge permit.

- Several of the spills resulted from blocked sewer lines. The amended complaint alleged that excessive pressure from the blocked lines had caused manhole covers to pop off.

- The amended complaint also alleged that, based on local road standards and a contractor who responded to the incident, the manhole covers were required to be at or below grade. However, the manhole cover at the Ungers'

home was above grade and was thus susceptible to being knocked off by vehicles.

¶ 16    These allegations are sufficient to establish — at least at the motion to dismiss stage — that the District waived immunity under the CGIA by failing to maintain its sewer system in its original condition. Thus, the district court did not err when it denied the District's motion to dismiss on these grounds.

### C.    Prior Notice of Dangerous Condition

¶ 17    The District also contends that the district court erred by concluding that the District waived its sovereign immunity because the Ungers did not prove that the District had prior notice of a dangerous condition of a public water or sanitation facility.

¶ 18    It is not entirely clear from the district court's order how it intended to address the District's argument that the District had not waived immunity under section 24-10-106(1)(e). In the order, the court noted that the District had raised three arguments in its motion: a challenge based on negligent design and construction, a dangerous condition challenge under section 24-10-106(1)(e), and a failure to maintain challenge under section 24-10-106(1)(f). Regarding the subsection (1)(e) challenge, the court stated that the

8

District "argues that there was no waiver of sovereign immunity pursuant to [section] 24-10-106(1)(e) because the Ungers['] alleged injuries were not the result of a dangerous condition of which [the District] had prior notice." The court followed this statement with a footnote:

> The Court will not consider the motion to dismiss based upon the lack of [the District's] prior knowledge of the need for maintenance of the sewer line at this time. The standard is whether [the District] knew or should have known of an unreasonable risk. The complaint contains some allegations of prior notice and the should have known standard is more properly addressed after the completion of discovery. Such argument may, if appropriate, be raised in a subsequent motion for summary judgment.

(Citation omitted.)

¶ 19    The court then substantively addressed only the negligent design and construction argument and the subsection (1)(f) failure to maintain argument. The court dismissed the first and part of the fourth claims for relief based on the negligent design and construction argument. But when it addressed the subsection (1)(f) argument, the court concluded that "[t]he allegations contained in the second, third, and parts of the fourth causes of action in the

amended complaint allege the [Ungers'] injuries were caused by the failure of [the District] to properly maintain their sewer lines and sovereign immunity is waived by the CGIA as to these claims." Accordingly, the court denied the motion to dismiss for those claims.

¶ 20 It appears from the order, then, that the district court denied the motion to dismiss under section 24-10-106(1)(f) based on the allegations that the District failed to maintain its sewer system. As detailed above, *supra* Part II.B, we reject the District's challenge to that ruling. Accordingly, we cannot say that the district court erred by denying the motion to dismiss the amended complaint on that basis.

¶ 21 That said, it also appears that the district court did not rule on the District's challenge under section 24-10-106(1)(e). Given that we affirm the court's denial of the motion to dismiss on subsection (1)(f) grounds — and that the court didn't rule on the section (1)(e) challenge — we see no reason to review this contention further.

¶ 22 Nonetheless, to the extent that the District wishes to maintain a separate challenge under section 24-10-106(1)(e) given this opinion and the posture of the case when returned to the district

court, it may renew its motion to dismiss on that ground in the district court.

### D. *Trinity* Hearing and Discovery

¶ 23 The District contends that the district court erred when it (1) failed to hold a *Trinity* hearing and (2) determined that the District's argument related to lack of notice of the alleged dangerous condition was best addressed after discovery was complete. We address each issue in turn.

### 1. Applicable Law and Standard of Review

¶ 24 "When the alleged jurisdictional facts are in dispute, the trial court should conduct [a *Trinity*] hearing and enter findings of fact." *Tidwell v. City & County of Denver*, 83 P.3d 75, 85-86 (Colo. 2003). These hearings ensure that the district court has jurisdiction, as "[t]he sovereign cannot be forced to trial if a jurisdictional prerequisite has not been met." *Trinity Broad. of Denv., Inc.*, 848 P.2d at 924. However, when jurisdictional facts are not in dispute, the district court "may rule on the C.R.C.P. 12(b)(1) motion and decide the sovereign immunity question without a hearing." *Bilderback v. McNabb*, 2020 COA 133, ¶ 9.

11

¶ 25    A district court's decision "whether to conduct a *Trinity* hearing [is reviewed] for abuse of discretion." *Id.* at ¶ 10. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension or misapplication of the law." *Air Sols., Inc. v. Spivey*, 2023 COA 14, ¶ 50.

### 2. The District Court Did Not Abuse Its Discretion by Not Holding a *Trinity* Hearing

¶ 26    To start, the District argues that the district court abused its discretion by failing to hold a *Trinity* hearing. Crucially, however, the District never asked the district court to hold a *Trinity* hearing. It's true that a court should hold a *Trinity* hearing when jurisdictional facts are in dispute, *Tidwell*, 83 P.3d at 85-86, and it should afford the parties the opportunity to request such a hearing, *Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253, 1260 (Colo. 2003). But if no jurisdictional facts are in dispute and there is no request for a hearing, then the court may rule on the pleadings alone. *Id.*

¶ 27    As detailed above, we conclude that the district court resolved the motion to dismiss under section 24-10-106(1)(f). In its appellate

briefing, the District asserts that the court erred because the duty of maintenance is measured in relation to the original condition of the facility and the Ungers did not demonstrate that condition. The District asserts that the court should instead have held a *Trinity* hearing sua sponte to resolve this question.

¶ 28    In its order, the court properly noted, quoting *Powell*, 48 P.3d at 565, that "'maintain' is defined as 'keeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed.'" The court then concluded that "[t]he allegations in the second, third[,] and parts of the fourth causes of action in the amended complaint allege the plaintiffs['] injuries were caused by the failure of [the District] to maintain [its] sewer lines and sovereign immunity is waived by the CGIA as to these claims."

¶ 29    The complaint supports the district court's conclusion. The Ungers attached to the amended complaint the CDPHE notice of violation and an evaluation from a soil remediation company. CDPHE issued the notice of violation to the District because the District reported multiple sewer overflows and spill events in violation of its permit. Due to those violations, the District was

13

required to retain an independent third party experienced in soil remediation to perform an evaluation. The soil remediation evaluation recommended that the District "perform[] a field inventory of manhole condition data to assess the need for rehabilitation or replacement of manholes" since there was no data available or provided for the District's manholes. And the Ungers included the statement from the District in the Pagosa Daily Post article confirming that the District had committed to inspecting the condition of the manholes. The statement also indicated that many of the District's lift stations — which pump sewage uphill when gravity flow is not an option — were installed in the early 1970s, they relied on outdated technology, and the vaults housing the pumping equipment "are decaying and prone to infiltration." And the amended complaint alleged that excessive pressure from the blocked lines had previously caused manhole covers to pop off.

¶ 30    As the district court concluded, these facts in the complaint, taken as true, show that the District had knowledge that its sewer system had "changed from its original condition and this change poses a danger." *Swieckowski,* 934 P.2d at 1385. The District didn't raise a dispute as to these key jurisdictional facts. Under

these circumstances — and because the District didn't request a *Trinity* hearing — the district court was not obligated to hold one. *See BNC Metro. Dist. No. 1 v. BNC Metro. Dist. No. 3*, 2025 COA 52, ¶ 39 ("When there is no evidentiary dispute, 'the court may rule without a hearing.'" (quoting *Duke v. Gunnison Cnty. Sheriff's Off.*, 2019 COA 170, ¶ 32)). Thus, the district court did not abuse its discretion by not conducting a *Trinity* hearing sua sponte.

### 3. The Discovery Order Is Not Reviewable Now

¶ 31  The District also argues that the district court erred because it "mandated [the District] to proceed through discovery in its entirety" without holding a *Trinity* hearing to determine if the District was immune. To the extent the District argues that a *Trinity* hearing was necessary to resolve factual disputes in connection with the motion to dismiss ruling, we address those arguments above.

¶ 32  To the extent the District challenges the discovery ruling itself, such a challenge is premature. The case before us is an interlocutory appeal of a motion to dismiss based on sovereign immunity. *See* § 24-10-108, C.R.S. 2025. Review of whether a district court abused its discretion in a discovery matter is generally

15

not allowed in an interlocutory appeal. *Affiniti Colo., LLC v. Kissinger & Fellman, P.C.*, 2019 COA 147, ¶ 8. We thus do not consider it further. The District will have the opportunity to challenge the court's discovery rulings in due course once the court enters a final judgment in the case.

### III.     Request for Attorney Fees

¶ 33    The District requests attorney fees and costs under C.R.C.P. 12(b); sections 13-16-113 and 13-17-201, C.R.S. 2025; and C.A.R. 28(a)(9). The Ungers oppose the request because they assert that the district court's governmental immunity ruling was correct.

¶ 34    A request for attorney fees on appeal "must include a specific request, under a separate heading, and must explain the legal and factual basis for an award of attorney fees. Mere citation to . . . a statute, without more, does not satisfy the legal basis requirement." C.A.R. 39.1.

¶ 35    The District's brief does not satisfy C.A.R. 39.1 because it does not explain the factual basis for the attorney fee request and merely cites two rules and two statutes without further explanation. Moreover, the District is not the prevailing party on appeal.

Accordingly, the District's request for attorney fees and costs is denied.

## IV.     Disposition

¶ 36     The order is affirmed. We conclude that the district court did not rule on the District's challenge under section 24-10-106(1)(e), and we take no position on such a challenge. Should the District wish to raise that challenge again in the district court, it may do so.

JUDGE DUNN and JUDGE LIPINSKY concur.